Slaughter, J.
 

 At issue is whether Indiana law allows a judgment-creditor to garnish a cash bail bond the judgment-debtor posted in an unrelated criminal matter. The plaintiff tried to garnish the bond to satisfy his unpaid civil judgment, but the trial clerk, who was named a garnishee-defendant in the civil case, released it to the defendant's attorney. The plaintiff sought to hold the clerk liable, but the trial court ruled the bond was not subject to garnishment and found for the clerk. We disagree and reverse. The clerk who holds the bond in a criminal case is an eligible garnishee-defendant in the civil case where the judgment was entered, and the bond remains subject to the garnishment lien filed there. The only qualification is that the judgment-creditor may not recover on the bond until the criminal court releases it. Here, the clerk is liable on the bond because she distributed its proceeds before the civil court determined the plaintiff's right to them.
 

 Factual and Procedural History
 

 In 2013 Plaintiff, Dennis Garner, obtained a default judgment for $20,600, plus costs, against Gregory Kempf in the Vanderburgh Superior Court 7. In that same court, Garner initiated proceedings supplementary to execution to collect on his civil judgment by garnishing Kempf's bank account and tax refunds.
 

 On July 30, 2015, while his judgment to Garner remained unsatisfied, Kempf was arrested in an unrelated criminal matter. He appeared in a different court in Vanderburgh County-Superior Court 3-and posted a $5,000 cash bond with the County Clerk. The Clerk acknowledged Kempf's cash deposit by issuing receipt number 2015-40294-CLK.
 

 The next day, Garner initiated new proceedings supplemental in the Civil Court, where he secured the default judgment, seeking to garnish the cash bond Kempf had posted in the Criminal Court. Garner's complaint named Kempf as defendant and the Clerk as garnishee-defendant. Garner served both defendants personally but filed nothing concerning the bond in the Criminal Court.
 

 On August 13, after Kempf had been charged with a separate felony for which he was held without bond, he moved the Criminal Court to release the $5,000 bond to his defense counsel to pay legal fees. The Criminal Court granted the motion and ordered the Clerk to issue a check payable to Kempf's lawyer "for all monies
 and proceeds due under receipt number 2015-40294-CLK." Nobody notified the Criminal Court of the proceedings supplemental pending in the Civil Court.
 

 On September 22, the Civil Court held a hearing on Garner's complaint concerning the proceedings supplemental. Garner sought a judgment against the Clerk for $5,000, arguing that once she received notice of the proceedings supplemental in the Civil Court concerning the Criminal Court bond, a judicial lien attached to that bond by operation of law and prevented her from releasing the money. The Clerk maintained she properly released the bond under the Criminal Court order because there was no final garnishment order concerning the proceedings supplemental from the Civil Court.
 

 The Civil Court ruled against Garner, concluding that the Clerk "[was] not holding any funds of the Defendant [Kempf] subject to garnishment" and "that the Plaintiff [Garner] [was] not entitled to a judgment against the Garnishee Defendant, Vanderburgh County Clerk, in the amount of $5,000 for the release of the bond to Defendant's attorney in his criminal matter." In support of its ruling, the Civil Court relied on an internal court memorandum that the judges of the Circuit and Superior Court had sent to a prior Vanderburgh County clerk. In pertinent part, the memo instructed the clerk that bonds released in a criminal case are subject to garnishment orders and must be entered on the CCS in the criminal case.
 

 Please be advised that when a Court releases a bond in a criminal case, the release of the bond is subject to any garnishment orders, liens, or assignments placed against the bond. In order for such a claim to be placed against the bond, a minute must be entered on the Chronological Case Summary for the criminal case[.]
 

 The Civil Court ruled against Garner because it concluded the Clerk was not holding any funds of Kempf subject to garnishment and, contrary to the internal memo, Garner failed to notify the Criminal Court of his garnishment lien pending against Kempf in the Civil Court.
 

 Garner appealed, and a divided Court of Appeals reversed.
 
 Garner v. Kempf
 
 ,
 
 70 N.E.3d 408
 
 (Ind. Ct. App. 2017). The Clerk then sought transfer, which we granted, thereby vacating the Court of Appeals' opinion.
 

 Discussion and Decision
 

 This case involves the interplay among several statutes-those governing garnishments, proceedings supplemental, and bail bonds.
 
 See
 
 Ind. Code ch. 34-25-3; 34-55-8; 35-33-8 (2008 Repl.). We must determine not only what each statute means but also how each interacts with the others. A statute's meaning and scope are legal questions we review de novo.
 
 ESPN, Inc. v. Univ. of Notre Dame Police Dep't.
 
 ,
 
 62 N.E.3d 1192
 
 , 1195 (Ind. 2016). If a statute is clear and unambiguous, we apply its words and phrases "in their plain, ordinary, and usual sense."
 
 KS&E Sports v. Runnels
 
 ,
 
 72 N.E.3d 892
 
 , 898-99 (Ind. 2017) (citation omitted). As we interpret a statute, "we are mindful of both what it does say and what it does not say."
 
 ESPN, Inc.
 
 ,
 
 62 N.E.3d at 1195
 
 (citations and internal quotation marks omitted). Our goal is to effectuate the statute's reasonable, commonly understood meaning.
 

 We hold that the governing statutes permit a civil-judgment-creditor to garnish a cash bond held by a court clerk that a judgment-debtor has posted in an unrelated criminal matter, but those funds are available to the judgment-creditor only if the criminal court has ordered the bond released. Here, the Clerk should have held the cash bond posted in the criminal matter until the Civil Court determined Garner's
 right to the proceeds to satisfy his judgment. We reverse the trial court's judgment for the Clerk and remand with instructions to enter judgment for Garner.
 

 I. Indiana law allows a judgment-creditor to garnish a cash bail bond posted by a judgment-debtor and held by a court clerk in an unrelated criminal matter.
 

 A. Court clerks are subject to garnishment proceedings.
 

 Proceedings supplementary to execution are remedial actions authorized by statute. I.C. ch. 34-55-8 (2008 Repl.). They enable creditors to enforce money judgments against non-paying debtors.
 
 Prime Mortg. USA
 
 ,
 
 Inc. v. Nichols
 
 ,
 
 885 N.E.2d 628
 
 , 668 (Ind. Ct. App. 2008). Because these proceedings merely continue the underlying suit, creditors must initiate them under the same case number and in the same court that issued the civil judgment.
 

 Id.
 

 See also Ind. Trial Rule 69(E). A court's sole objective in conducting proceedings supplemental is "determining whether an asset is in the judgment debtor's possession or subject to the judgment debtor's control and can be attached to satisfy the judgment."
 
 Prime Mortg. USA
 
 ,
 
 885 N.E.2d at 668
 
 (quoting
 
 State Farm Mut. Auto Ins. Co. v. Estep
 
 ,
 
 873 N.E.2d 1021
 
 , 1029 (Ind. 2007) (Boehm, J., concurring in part and dissenting in part) ). Cf.
 
 Bowyer Excavating, Inc. v. Commissioner, Indiana Dept. of Environmental Management
 
 ,
 
 671 N.E.2d 180
 
 , 184 (Ind. Ct. App. 1996) (finding "any technical distinction between" attachment and garnishment "irrelevant" because both procedures seek judgment-debtor's property, except attachment applies when debtor holds or controls his property and garnishment applies when third party possesses or controls defendant's property).
 

 Garnishment is one option for satisfying a judgment through proceedings supplemental. See Trial Rule 69(E)(4) ;
 
 Freidline v. Thomalla
 
 ,
 
 852 N.E.2d 17
 
 , 20 (Ind. Ct. App. 2006). Garnishment is authorized by statute, I.C. ch. 34-25-3 (2008 Repl.), and applies when a third party holds or controls the judgment-debtor's property. If a judgment-creditor believes a third party possesses or manages property of the debtor subject to execution, the creditor must name the third party as a garnishee-defendant in the complaint for proceedings supplemental and serve both the debtor-defendant and garnishee-defendant with a summons to appear in court to answer the complaint. T.R. 69(E)(4) ; I.C. §§ 34-25-3-2(a), (c) (2008 Repl.).
 

 Indiana's garnishment statute specifically subjects "clerks of the circuit and superior courts" to garnishment to the extent they have "money or choses in action" belonging to a judgment-debtor "at the time of service of the garnishee process".
 
 Id
 
 . §§ 34-25-3-1(a)(1)(A), 1(b) (2008 Repl.). Trial-court clerks receive no special treatment or consideration as garnishee-defendants, but are treated "in the same manner as ...other persons...subject to garnishment."
 

 Id.
 

 § 34-25-3-1(b) (2008 Repl.). In their official capacity, clerks often hold another person's money or property, including payment of judgments, fees, restitution, and bail. See
 
 id
 
 . ch. 35-33-8 (2008 Repl.).
 

 We see no ambiguity in these statutes. They establish that court clerks can be garnishees, and they do not prohibit garnishing cash bail bonds.
 

 B. Our bail-bond statute does not prohibit garnishing cash bonds.
 

 Next, we consider whether the bail statute precludes garnishment and hold it does not. Like garnishments and proceedings supplemental, bail bonds also are governed by statute.
 
 Id
 
 . ch. 35-33-8 (2008 Repl.). When a clerk receives a criminal defendant's bond, she holds it (among other
 reasons) to ensure the defendant's appearance in court.
 
 Id
 
 . § 35-33-8-1(1) (2008 Repl.). By operation of law, a defendant who pays a cash bond agrees the court may "retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted."
 

 Id.
 

 § 35-33-8-3.2(a)(1) (Supp. 2012). But a defendant may be entitled to recoup any remaining portion of the cash bond if the court alters or revokes bail,
 

 id.
 

 § 35-33-8-5 (2008 Repl.), or when the criminal matter ends,
 

 id.
 

 § 35-33-8-3.2(b) (Supp. 2012).
 

 The Clerk argues Garner is not entitled to relief because Section 7(b) permits bond proceeds to be garnished only when the underlying civil judgment "aris[es] out of the same transaction or occurrence forming the basis of the criminal case".
 

 Id.
 

 § 35-33-8-7(b) (Supp. 2012). Section 7(b) provides, in full:
 

 In a criminal case, if the court having jurisdiction over the criminal case receives written notice of a pending civil action or unsatisfied judgment against the criminal defendant arising out of the same transaction or occurrence forming the basis of the criminal case, funds deposited with the clerk of the court under section 3.2(a)(2) of this chapter may not be declared forfeited by the court, and the court shall order the deposited funds to be held by the clerk. If there is an entry of final judgment in favor of the plaintiff in the civil action, and if the deposit and the bond are subject to forfeiture, the criminal court shall order payment of all or any part of the deposit to the plaintiff in the action, as is necessary to satisfy the judgment. The court shall then order the remainder of the deposit, if any, and the bond forfeited.
 

 Id.
 

 And here, it is undisputed, Garner's civil judgment is unrelated to the after-the-fact criminal charge in which Kempf posted the cash bond.
 

 We view Section 7(b) differently than the Clerk and agree with the Court of Appeals that Section 7(b) "provides an additional safeguard" for judgment-creditors who are victims of the judgment-debtor's crime,
 
 Garner
 
 ,
 
 70 N.E.3d at 412
 
 , and does not limit garnishment to those narrow circumstances. In our view, Section 7(b) merely limits the authority of criminal courts to forfeit bond proceeds when the underlying civil judgment derived from the judgment-debtor's crime. But it does not prevent a judgment-creditor from seeking a garnishment lien on a bond that might eventually be paid to someone else with statutory priority to those proceeds. Stated differently, Section 7(b) delays forfeiture when the criminal court learns a crime victim is simultaneously seeking a civil judgment against the defendant for injury resulting from the crime. Section 7(b) thus stands as a narrow exception to the general rule that a court may declare a bond forfeited and order the funds transferred to the state common school fund when the criminal defendant fails to appear. But this provision is not a broad rule generally exempting cash bail bonds from garnishment.
 

 We conclude that nothing in Chapter 35-33-8, including Section 35-33-8-7(b), exempts cash bail bonds from proceedings supplemental or prohibits a judgment-creditor from garnishing the cash bond that a judgment-debtor deposits with the clerk in an unrelated criminal matter.
 

 Our dissenting colleagues read the governing statutes differently. They believe cash bail bonds are not subject to garnishment in the same way as other assets of a judgment-debtor held by a third party. According to the dissent, unless specifically authorized by statute, bonds are not subject to garnishment, and a criminal
 court cannot authorize a clerk to release them to a judgment-creditor. We respectfully disagree with the dissent's asserted grounds for exempting bail bonds from general garnishment principles.
 

 For starters, we note that the dissent raises an argument on behalf of the Clerk that the Clerk never made. She never argued that bonds are not subject to garnishment. To the contrary, the longstanding practice in Vanderburgh County, as reflected in their courts' "internal memo", was to subject criminal bail bonds to civil garnishment orders. The only catch was that the CCS in the criminal case had to reflect the judgment-creditor's claim against the bond.
 

 Next, the dissent relies on two canons of statutory interpretation-the rule of lenity and the negative-implication canon-but neither canon applies here. The rule of lenity is an interpretive canon that penal statutes should be construed strictly. But the disputed bail-bond provisions are not penal statutes; they neither define a crime nor prescribe a penalty.
 

 Neither does the negative-implication canon apply here. This canon-also known by the Latin phrase
 
 expressio unius est exclusio alterius
 
 ("the expression of one is the exclusion of another")-is a powerful interpretive rule when it applies. But it must be applied "with great caution, since its application depends so much on context." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 107 (2012). As Scalia and Garner explain, the canon applies only when the thing expressed reasonably identifies
 
 all
 
 things included within the grant of what is being permitted or excluded. Consider the familiar restaurant sign "No dogs allowed". Nobody reasonably believes the restaurant intends to exclude only dogs and to welcome all other animals. The reason for the sign's limited exclusion is not that dogs are the only unwelcome animal, but that dogs are the animal most likely to be brought into a restaurant.
 

 Similar context-based interpretive limits also apply to the bail-bond statute. This statute specifies when bail proceeds can be diverted for other purposes-to pay the "costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." I.C. § 35-33-8-3.2(a)(1) (Supp. 2012). The dissent infers from this list of approved uses that all other uses are forbidden, including the proposed use here of garnishing Kempf's bond to satisfy his unrelated civil judgment in favor of Garner. But that is not the best understanding of the legislature's enumeration. What the legislature has identified are approved alternative uses for bail proceeds in a specific, narrow context. That context, by its terms, is confined to what criminal courts may order done with bail bonds in the aftermath of a defendant's conviction. In other words, the legislature has identified an exhaustive list of authorized uses
 
 within that specific context
 
 . By negative implication, it follows that all other proposed uses within that context are foreclosed. But the disputed issue here falls
 
 outside that context
 
 -i.e., outside the criminal court's authority over the bond after a defendant's conviction-so the negative-implication canon does not apply. The legislature has not limited the extent to which a civil court may garnish bail proceeds to satisfy a civil judgment, and we decline to impose any such limits.
 

 We also decline to embrace the dissent's view that a clerk of court may return bail proceeds only to the defendant and no one else. According to the dissent, that is the only permissible interpretation of subsections 3.2(b) and 7(f), which require that net bond proceeds be returned "to the defendant". [Dissent Op. 1103.] Any contrary reading, in the dissent's eyes, puts clerks
 in a catch-22 situation, subjecting them to conflicting, incompatible duties that will cause them to breach an obligation to someone. We respectfully disagree.
 

 For one thing, the dissent's interpretation would ban what the Clerk did below, which was to pay the $5,000 bond proceeds to Kempf's lawyer. The lawyer isn't the defendant. Yet the dissent is untroubled by this supposed violation of what they believe the statute requires. To be clear, we eschew such a hyper-literal interpretation of the statute. Instead, we believe the best, most reasonable interpretation is that the statute is merely recognizing that a bail bond is an asset of the defendant. And, all other things being equal, the defendant is entitled to have this asset, less any authorized deductions, returned to him when the bond is released because it is no longer needed to secure his appearance at trial. But we disagree that the statute requires this asset to be treated any differently for garnishment purposes than any other asset of the defendant.
 

 In addition, our interpretation of the various statutes does not impose irreconcilable duties on clerks. Under our approach, bond proceeds presumptively belong to the defendant and are to be returned to the defendant unless-and it's an important unless-someone else has a claim to that property. One example of a competing claim, presented here, is when the judgment-creditor obtains a judgment in a civil case against the defendant and later secures a garnishment lien to secure payment of the judgment. Another example is when the bond is posted not by the defendant himself but by a third party on the defendant's behalf. In both situations, the bond is subject to a competing claim, so the clerk incurs no liability to the defendant when she pays out the bond not "to the defendant" but to someone else. The dissent's view would effectively overrule appellate precedent holding that a bond posted by a third party is to be returned to the third party. See, e.g.,
 
 J.J. Richard Farm Corp. v. State
 
 ,
 
 642 N.E.2d 1384
 
 (Ind. Ct. App. 1994). We believe that precedent to be correct and disagree with the dissent's implicit rejection of it.
 

 The dissent also says our approach leads to an unjust result [Dissent Op. 1103], but we don't see it that way. As a threshold matter, courts should interpret statutes based on their enacted text and not the justness of the outcome. If the legislature writes a statute imposing an onerous outcome, it is not our job to soften the blow. On this record, Garner did precisely what the statutes and Trial Rule 69(E) required of him. He filed his garnishment complaint in the civil action where he obtained the judgment against Kempf and served it and the summons on the Clerk. The Clerk, who had notice of the pending garnishment proceeding and of Garner's lien against the bond proceeds, failed to discharge her duty as a garnishee-defendant.
 

 C. Indiana case law does not prohibit garnishing cash bail bonds.
 

 Next, we reject the Clerk's argument that a pair of appellate decisions compels a different result. See
 
 O'Laughlin v. Barton
 
 ,
 
 549 N.E.2d 1040
 
 (Ind. 1990) ;
 
 J.J. Richard Farm Corp.
 
 ,
 
 642 N.E.2d 1384
 
 . Neither
 
 O'Laughlin
 
 nor
 
 J.J. Richard Farm Corp.
 
 addressed the precise issue presented here, which is whether cash bail bonds are garnishable under Indiana law.
 

 O'Laughlin
 
 addressed mandatory bond forfeiture and transfer to the common school fund when the defendant failed to appear in a criminal matter.
 
 549 N.E.2d at 1042
 
 . We did not hold that bonds are not garnishable. In fact, we explained that the
 Indiana State Treasurer would be a necessary party to proceedings supplemental to determine rights to a posted cash bond, implying the bond
 
 could
 
 be garnished.
 

 Id.
 

 Our narrow holding was that the trial court should have forfeited the cash bail bond when the defendant failed to appear, and that the forfeited proceeds should have been transferred to the state's common school fund.
 

 Id.
 

 Nor does
 
 J.J. Richard Farm Corp.
 
 control here. It did not address garnishments; it addressed ownership interests in a cash bond.
 
 642 N.E.2d at 1385-86
 
 . There, a criminal defendant's employer posted $50,000 bail.
 

 Id.
 

 at 1385
 
 . Once the criminal matter concluded, the prosecutor tried to attach the cash bond to satisfy the defendant's child-support arrearage.
 

 Id.
 

 The employer intervened and sought return of the bond since it retained ownership of the money throughout the criminal proceedings.
 

 Id.
 

 The Court of Appeals agreed with the employer, holding the trial court erred in failing to remit the $50,000 bond to the employer.
 

 Id.
 

 at 1386
 
 . Only in dicta did the Court recite the comment on which the Clerk relies here-that cash bonds should not be applied to a defendant's debts outside the narrow parameters of Section 35-33-8-7(b).
 

 Id.
 

 at 1387-88
 
 . Our discussion above in Section I.B. establishes those dicta are misplaced.
 

 D. In a garnishment case, the civil court with jurisdiction over proceedings supplemental does not automatically yield jurisdiction to the criminal court that admitted the defendant to bail.
 

 Under Indiana law, the court that issued the underlying civil judgment retains jurisdiction over proceedings supplementary to execution. See
 
 Prime Mortg. USA, Inc.
 
 ,
 
 885 N.E.2d at
 
 668 ; T.R. 69(E). Even when proceedings supplemental run parallel to some other action in another court-e.g., a criminal matter or estate administration-the proceedings-supplemental court does not yield jurisdiction to the other court. Cf.
 
 Murphy v. Busick
 
 ,
 
 22 Ind.App. 247
 
 , 248-49,
 
 53 N.E. 475
 
 (1899) (explaining that party acting under direction of circuit court in one county does not prevent circuit court in another county from requiring him to answer in supplementary proceedings).
 

 Reinforcing this conclusion is Trial Rule 69(E), which specifically directs that proceedings supplementary to execution must be filed in the civil court that rendered the underlying judgment. "Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered [.]" T.R. 69(E). On matters of procedure, to the extent a statute is at odds with our rule, the rule governs. See
 
 State ex rel. Gaston v. Gibson Circuit Ct.
 
 ,
 
 462 N.E.2d 1049
 
 , 1051 (Ind. 1984) ("this Court has the authority to adopt procedural rules governing the conduct of litigation, and these rules take precedent over conflicting statutes.").
 

 Reviewing the relevant caselaw and the various statutes in tandem, we see no prohibition against garnishing bail bonds. Because the Indiana Code expressly provides that circuit- and superior-court clerks can be named as garnishee-defendants-subject to garnishment in the same manner and to the same extent as others-we hold that cash-bond proceeds held by such clerks are garnishable.
 

 II. The Clerk is liable to Garner for the $5,000 bond proceeds.
 

 The Clerk does not dispute that Garner properly initiated proceedings supplementary to execution to garnish Kempf's cash bail bond. Garner filed a complaint in the same Civil Court and under the same case number as the underlying
 civil judgment. And Garner served both Kempf and the Clerk with a summons to appear in the proceedings supplemental. When a garnishee-defendant receives a summons to appear in proceedings supplemental, she becomes "accountable to the plaintiff in the action for the amount of money, property, or credits in the garnishee's possession or due and owing from the garnishee to the defendant." I.C. § 34-25-3-3 (2008 Repl.). In effect, upon serving the summons, the judgment-creditor secures a lien on the defendant-debtor's property then held by the garnishee-defendant.
 
 Butler v. Jaffray
 
 ,
 
 12 Ind. 504
 
 , 511 (1859). See also
 
 Radiotelephone Co. of Indiana, Inc. v. Ford
 
 ,
 
 531 N.E.2d 238
 
 , 240 (Ind. Ct. App. 1988) ("The rule today is the same as it has been for over one hundred years; a creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental.");
 
 Fifth Third Bank v. Peoples Nat'l. Bank
 
 ,
 
 929 N.E.2d 210
 
 , 214 (Ind. Ct. App. 2010) ("It is well settled under Indiana law that a judgment creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental.") (citation omitted). Consequently, the garnishee-defendant "in proceedings supplemental is liable for paying out funds in a manner inconsistent with the judgment creditor's lien."
 

 Id.
 

 (citation omitted).
 

 Here, the Clerk's duty was to hold the cash bond posted in the criminal matter pending the Civil Court's determination of Garner's right to the proceeds to satisfy his judgment. See
 
 First Nat'l. Bank of Indianapolis v. Armstrong
 
 ,
 
 101 Ind. 244
 
 , 247 (1885). The Clerk failed to inform the Criminal Court of the lien, and then she released the bond to Kempf's attorney despite having been served with the garnishment complaint in the Civil Court. It is no excuse that the Criminal Court ordered the Clerk to release the bond to the attorney. "Even when forcibly divested, [the garnishee] will be presumed responsible for the forthcoming of the property",
 

 id.
 

 , because she holds the money received from any claimant until there has been a final determination by the court hearing the proceedings supplemental.
 

 Id.
 

 When the Criminal Court judge, unaware of the judgment-creditor's lien, approved Kempf's request to use those proceeds to pay his defense counsel's fees, those proceeds were no longer encumbered to ensure Kempf's appearance at his criminal trial. At that point, the proceeds were subject to Garner's preexisting garnishment lien in the Civil Court. Because the Clerk released the $5,000 cash bond before the Civil Court determined Garner's right to the proceeds, she is liable to Garner for that amount.
 

 Conclusion
 

 For these reasons, we reverse the trial court's judgment for the Clerk and remand with instructions to enter judgment for Garner in the amount of $5,000.
 

 Massa and Goff, JJ., concur.
 

 David, J., dissents with separate opinion in which Rush, C.J., joins.